35 So.2d 53

### BENTLEY v. STATE.
### 7 Div. 879.

Court of Appeals of Alabama.
April 20, 1948.

Chas. Douglass, of Anniston, for appellant.

A. A. Carmichael, Atty. Gen., and Richard S. Brooks, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The indictment in this case was proper in form and substance and the trial court committed no error in overruling the demurrers thereto.

Said indictment charged the defendant with the offense of arson, in that, he "willfully set fire to, or burned, or caused to be burned, or aided or procured the burning, a dwelling house, the property of Lee Tanner," etc.

Upon the trial in the court below the evidence was practically without material conflict. The "Statement of the Facts" contained in briefs of counsel are borne out by the record and are in substance as follows:

"Statement of the Facts

"The evidence presented tended to establish the following facts:

490

"The defendant, Arthur Lee Bentley, on or about the afternoon of February 2, 1946, having consumed a considerable amount of whiskey (see transcript page 24) left his home at Route 1, DeArmandville in Calhoun County, Alabama, and went to the woods to get some splinters. After obtaining the same, he started home by way of Mr. Lee Tanner's house. Mr. Tanner's house was a wooden structure consisting of five rooms; a kitchen and a big living room downstairs; upstairs there were three complete bedrooms and a bath. The house was completely furnished. The kitchen appliances were all electrical, consisting of a hot water heater, a stove and a frigidaire (transcript page 3). The house was heated by means of a big fireplace in the living room (transcript page 4). This house was used as a kind of week end retreat. It was occupied practically every week end (transcript page 4). It was situated a little distance over the hill from the Anniston-Wedowee Highway in Calhoun County, just a short distance over a crooked road from the defendant's residence. This house was owned by the prosecuting witness, Lee Tanner, who stated the same to be worth $10,000.00 (transcript page 3). After the defendant reached this dwelling of Mr. Tanner's, he set his pine splinters down and attempted to enter the house by means of the door. Finding the door securely locked, he entered through a window (testimony of defendant, transcript page 25). Finding the house dark, he lit several of the aforementioned splinters and used them as a torch (transcript page 26). After a search for some 15 or 20 minutes, he threw his lighted splinters toward the fireplace in the living room of the Tanner dwelling and departed the house (testimony of defendant, transcript page 26). Upon returning to his own house immediately thereafter, he was informed by his sister-in-law that she had seen smoke and smelled rags or something burning. About an hour later, the defendant returned with one John Phillips to the scene of the burned Tanner dwelling (transcript page 28). There he saw Mr. Tanner and several other people, but he did not at this time admit having broken into and entered the Tanner dwelling. The next morning, Sunday, February 3, 1946, at about 7:00, the defendant returned to the scene where the Tanner dwelling had stood (transcript page 31). Later this same morning, Mr. Frank Craven, a Deputy State Fire Marshall, and Sheriff W. L. Borders, visited the scene of the fire, where they observed tracks leading around near the window. Mr. Craven stated (transcript page 5) these tracks seemed peculiar inasmuch as the heel print of both tracks indicated this heel making them was run over and further indicated that the sole of the shoe making the tracks was well worn. Along beside these tracks, they observed fresh orange peeling. Upon leaving the scene of the razed Tanner dwelling they met the defendant. At this time Mr. Craven noticed the condition of the defendant's shoes and the resemblance of the tracks then and there made by the defendant's shoes to those they had seen around and about the razed Tanner dwelling (transcript page 6). They, after having a long conversation with the defendant, carried him to the sheriff's office. It was at this time and place that the defendant admitted the action which he later confessed to on the trial. This admission was reduced to writing by Mr. Craven and the defendant signed it. The only variance in this written confession of the defendant and his testimony during the trial of the case was that, when on trial he stated that he did not remember stating to Mr. Craven and Mr. Borders that he was mad at the time he threw the torch down in the Tanner dwelling (transcript page 32)."

The State's contention in brief is as follows:

"It is the State's theory that the defendant being in somewhat of an intoxicating state grew angry (as Deputy Marshall Craven and Sheriff Borders testified the defendant confessed to them, transcript pages 8 and 10) at not being able to find the liquor he sought, and threw the lighted pine splinters on the wooden floor of the Tanner dwelling. He then took an orange and left the dwelling. It is the contention of the State that it was the result of the defendant's intentionally throwing or dropping the aforementioned lighted pine splinters on the wooden floor of the Tanner dwelling that caused the crime which he is charged with."

At the conclusion of the State's case, counsel for defendant made motion "to exclude the evidence as introduced by the State, and for dismissal of the case, on the ground that they have not made out a case against the defendant. The charge against him is 'willfully,' which means 'intentionally' burned the house. There is not any evidence here to show that he willfully burned the house, or that he intentionally burned it. Therefore they haven't made a case against him, and there is no issue for the jury to pass upon."

The court overruled the motion, and stated, "That is a matter for the jury to decide." Defendant excepted.

The foregoing presents the only point of decision for review here. There were several other insistences, but all of the same import.

We are in entire accord with the court's ruling in this connection.

The evidence presented the question of the guilt or innocence of the defendant, and was for the jury to consider and determine.

We are of the opinion said evidence was ample in every way to support the verdict of the jury and to sustain the judgment of conviction pronounced and entered, from which this appeal was taken.

No prejudicial error appearing, the judgment of conviction appealed from will stand affirmed.

Affirmed.